UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-180-GWU

LOUISE COUCH, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

07-180 Couch

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-180 Couch

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Louise Couch, a 39-year-old woman with an eighth-grade education and work experience as a cook (Tr. 459-60, 465), was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of mild chronic obstructive pulmonary disease, coronary artery disease, obesity, degenerative arthritis, morbid obesity, a personality disorder, and a major depressive disorder. (Supp. Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Couch retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Supp. Tr. 22-24A). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff could perform any jobs if she were limited to "light" level exertion, had a "seriously limited but not precluded" ability to maintain attention and concentration, and had

07-180  Couch

a "limited but satisfactory" ability to understand, remember, and carry out simple instructions, interact with supervisors and co-workers, and deal with work stresses. (Tr. 468-9).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 469).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability beginning May 1, 2004 due to problems with her heart and lungs, diabetes, nervous stomach, a kidney problem, spinal spurs, varicose veins, and obesity.  (Tr. 67-8).  She testified that she had last worked as a cook in 2004 and had been discharged after getting into a fight with her boss.  (Tr. 465). She described a large number of physical problems, including an unspecified heart condition which was being treated with diet and exercise because she could not afford testing, low blood sugar, chronic lung disease which required her to use oxygen at home, hypertension (controlled with medication), and back and knee problems which made it difficult for her to sit and walk.  (Tr. 461-3).  The diet which her heart doctor had prescribed had enabled her to reduce her weight from 340 to 260 pounds.  (Tr. 459).  She described nervousness and depression, and was attending counseling.  (Tr. 463-4).

8

Considering first the evidence regarding physical restrictions following the alleged onset date, medical records show a complaint of pelvic pain led to a diagnosis of gallstones and low blood sugar in June and July, 2004, but only medication was prescribed. (Tr. 161-3). The plaintiff's breathing was evaluated by Dr. A. T. Reddy in August, 2004, but a pulmonary function test showed only "mild" obstructive and restrictive dysfunction and mildly reduced diffusion. (Tr. 173,175). Her nasal symptoms and coughing were significantly improved with medication. (Tr. 173). Dr. Reddy opined that the breathing restriction could be secondary to obesity, and her complaints of shortness of breath were disproportionate to the results of the pulmonary function test. (Id.). He also recommended that Mrs. Couch stop smoking and obtain a sleep study. (Id.). Another pulmonary function test in April, 2005 produced similar results and an impression of only "mild" chronic obstructive pulmonary disease. (Tr. 219). She continued to smoke. Office notes from a physician at the Heart Clinic of Southeast Kentucky indicated the plaintiff was seen beginning in April, 2004, for complaints of chest pain, and her initial examination showed hypertension and obesity. (Tr. 370-1). Apparently a treadmill stress test was positive, but an echocardiogram was considered to be essentially normal, as was a cardiac catheterization. (Tr. 180, 372-3). Further office notes from the Heart Clinic indicate that the plaintiff was stable from a cardiac standpoint and doing well; she was advised to diet and exercise as much as possible. (E.g., Tr. 355-6, 366).

...

07-180 Couch

Her chest pain improved with medication. (Tr. 355). Later in 2005, the physician apparently felt there was a need for a nuclear stress test, but the plaintiff reported on a follow-up office visit that she did not have time to have one. (Tr. 351, 354).

Dr. Roy Varghese submitted two letters stating that Mrs. Couch needed surgery for carpal tunnel disease and "fibroid," but he did not give any functional restrictions. (Tr. 443, 445). Nor is there any evidence of treatment by Dr. Varghese.

The only functional restrictions were provided by non-examining state agency reviewers, who concluded that the plaintiff was capable of performing "medium" level exertion with occasional climbing of ladders, ropes, and scaffolds. (Tr. 391-406). The ALJ gave the plaintiff the benefit of the doubt in reducing her maximum exertional level to the "light" range. Although he did not include any limitation on climbing ladders, ropes, and scaffolds in the hypothetical question, Social Security Ruling (SSR) 85-15 states that such a limitation, by itself, "would not ordinarily have a significant impact on the broad world of work." SSR 85-15, p. 6. Accordingly, the ALJ's findings regarding physical restrictions are supported by substantial evidence.

Regarding the plaintiff's mental restrictions, the evidence indicates that she was briefly an inpatient at a "crisis stabilization unit" in June, 2005, following an argument with her 17-year-old son; she admitted that she was drunk at the time. (Tr. 239). She was assessed as having a substance-induced mood disorder, "rule

07-180 Couch

out" major depressive disorder and "rule out" dependent personality disorder. (Tr. 238). Her Global Assessment of Functioning (GAF) score was reported as 55. A GAF score in this range reflects "moderate" limitations. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. She left the unit against medical advice and was advised to have substance abuse treatment and attend Alcoholics Anonymous meetings. (Id.).

The plaintiff underwent two consultative psychological examinations.

I T. Baldwin, M.A., examined Mrs. Couch on April 11, 2005. (Tr. 221). She stated she was a slow learner, and was depressed and cried easily, mostly since her mother had died two years previously. (Tr. 222). She stated she did not have trouble getting along with people, but did not get out and associate with them, although she liked to talk on her CB radio at night. (Tr. 223). Her children did her housework and shopping. She was able to handle money and pay bills, had a driver's license, and drove her husband's car occasionally. Mr. Baldwin indicated that the plaintiff was pleasant, "high strung," friendly, cheerful, cooperative, and joked at times. (Id.). Her full-scale IQ was 88, she had a normal ability to relate, and no signs of excessive depression, agitation, irritability, or anxiety. (Tr. 224). He diagnosed an adjustment disorder and a GAF of 80. This score represents no more than a slight impairment per the DSM-IV-TR. He felt that she would have no

limitations on her activities as a result of intellectual or psychological impairments. (Tr. 225).

Dr. Pamela Starkey evaluated the plaintiff on January 10, 2006, and reviewed some previous records. (Tr. 380-6). Dr. Starkey described the plaintiff as being slightly irritable, and, although she smiled during part of evaluation, she also cried. (Tr. 381). There were some concentration problems as a result of depression. (Tr. 382). Mrs. Couch reported an arrest for public intoxication six to eight months before the examination, and said that she had consumed alcohol 10 days earlier. (Tr. 383-4). The psychologist diagnosed a major depressive disorder, "alcohol abuse vs. alcohol dependence," "rule out" reading and learning disorders, and a personality disorder. (Tr. 387). The GAF was given as 52, consistent with a "moderate" impairment per the DSM-IV-TR. Dr. Starkey opined that the plaintiff was likely to have only mild difficulty dealing with work stresses, mild to moderate difficulty understanding and remembering simple, 1-2 step instructions and responding appropriately to supervisors and co-workers, and a moderate to significant difficulty sustaining attention to carry out instructions in a work setting. (Tr. 388). She also indicated that the plaintiff would require 9 to 12 months of counseling along with abstinence from alcohol before she could be rendered capable of job training or "public employment efforts." (Tr. 388).

A state agency psychologist, Dr. Ilze Sillers, reviewed the evidence and concluded that the plaintiff would be "moderately limited" in the areas of carrying out detailed instructions, maintaining attention and concentration for extended periods, interacting appropriately with the general public, responding appropriately to changes in the work setting, and setting realistic goals and making plans independently of others. (Tr. 438-40). She stated that Dr. Starkey was given substantial weight. (Tr. 440).

The hypothetical restriction is generally consistent with the specific restrictions listed by Dr. Sillers, but given that there was no treating source opinion, the ALJ could reasonably have relied on the opinion of the one-time examiner Baldwin. Moreover, it appears that Dr. Starkey partially based her opinion on alcohol abuse/dependence issues, an impermissible basis for disability following the passage of Public Law 104-121. Therefore, the hypothetical factors are supported by substantial evidence.

The plaintiff argues on appeal that the ALJ did not give sufficient deference to the opinion of her treating sources, but she does not specifically identify a treating source opinion giving greater restrictions than found by the ALJ. Nor does it appear that any treating source did so. Accordingly, this argument is without merit. The plaintiff also maintains that the ALJ failed to consider her impairments in combination, but a review of the ALJ's decision shows that his analysis was

07-180 Couch

adequate in this regard. (Supp. Tr. 20, 22-3). See Gooch, supra. This argument is also without merit.

The decision will be affirmed.

This the 11th day of March, 2008.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**